The opinion of the court was delivered by
Watkins, J.
This is a supplement to suit of same title, which was disposed of by this court, recently. See 51st Annual, page 186.
From the record it appears, that a motion was filed in the District' Court “suggesting that the former, decree of this court dismissing this suit on the fourth exception filed by the defendant, has been annulled, avoided and reversed by the final judgment of the Supreme Court, rendered on appeal thereto, and ordering this cause to be reinstated on the docket of this court, to be proceeded with according to the views herein expressed and the lawand an order to that effect was made— a copy of the opinion of the Supreme Court being therewith filed.
Thereupon, the ease was reinstated on the docket of the District *1418 Court, and proceeded with according to law; and upon a trial thereof, the remaining exceptions of the defendant were sustained, and the suit again dismissed.
The reasons of the district judge for so doing are in writing, and were filed in the court a qua, and a judgment dismissing the suit was, thereupon, entered; and from that judgment, the plaintiff prosecutes this, her further appéal. '
For the purpose of a clear understanding and appreciation of this case, it will be necessary to make a few extracts from the plaintiff’s petition to which the exceptions of the defendant were directed, and which are substantially as follows, to-wit:
The plaintiff, Mrs. Emily J. Williams, wife of Charles II. Williams, a resident of and domiciled in the State of Mississippi, sues herein, individually, “and for the use and benefit of her daughter, Florence Williams, aged fourteen years, her husband being absent in the' State of Mississippi, and his present where'abouts therein unknown to her.”
She, thereupon, represents that the defendant, a corporation, as she is advised, under the laws of the State of Connecticut, with its principal place of business and general offices and factories in the city of Hartford, in that State, with a branch office and place of business at No. 1757 St. Charles avenue, in the city of New Orleans, where it is now operating and conducting its business, of the manufacture, sale and hire of bicy’cles, within and under the laws of this State, through its officers, agents and employees in charge thereof, “is justly and legally indebted unto-your petitioner, in the sum of ten thousand dollars, individually, and for the further sum of ten thousand dollars, for the use and benefit of her said minor daughter, for this, to-wit:—
“For libel, slander, public defamation of character, malicious prosecution, and false imprisonment of your petitioner and her said minor daughter, committed against them in the city of New Orleans, on Sunday, about April 4th, 1897, by the said Pope Manufacturing Company, its officers, agents and employees,' and for which said corporation is responsible and liable to them in damages.
“Your petitioner alleges that while she and her said minor daughter were quietly and in an orderly manner passing along Napoleon avenue, a public thoroughfare of this city, they were followed and pursued by two men, strangers to them, but who they afterwards learned were F. and Harold Bayhi, father and son, agents and employees of said Pope *1419 Manufacturing Company, acting as detectives and spotters for said company. That said two men overtook them on said public avenue, at or near the corner of Carondelet street, where they rudely accosted them, and forcibly arrested and detained them without cause therefor, and notwithstanding neither of them had, nor claimed to have, nor exhibited any right or authority for their action; they, then and there, in the presence of those passing along said avenue, publicly charged and accused your petitioner and her said daughter with having committed the felonious and infamous offense of grand larceny of two bicycles from the said Pope Manufacturing Company of the value of $120.00.
“That they were forcibly detained by said two men until the arrival of a policeman, Corporal O’Neal (by whom) they were carried in custody through the public streets of said city to the Seventh precinct station (wherein) they were incarcerated until about 8:30 p. m. the same evening, when they were transferred to the Second precinct station, and therein imprisoned and kept closely confined until about 1:30 o’clock the following evening, when, through the efforts of their minister and other friends, they were admitted to. bail, and discharged from custody.
“Petitioner further alleges, that an officer of the corporation, representing and acting for and on behalf of said corporation, joined and cooperated with said named employees in making said charge 'and arrest of your petitioner and her daughter, and in« their subsequent imprisonment and detention. That said accusation and charge were entirely false and unfounded as to them, and were made without any cause therefor; and your petitioner and her daughter earnestly protested their entire innocence, and begged and implored said parties to desist from their course, and to allow them to go without further molestation; but that their appeals and entreaties were received with contempt, and no further satisfaction accorded to theta than the statement that they, said men, were acting for a company, fully responsible and capable of paying all damages which they might inflict.”
Petitioner avers that although she and her daughter were first arrested about 5:30 o’clock on Sunday, no formal charge or affidavit was made, nor warrant issued for their arrest, until 1:30 p. m. the following day. In the meanwhile, they were unlawfully imprisoned and detained by procurement of said representatives of said corporation, acting for the corporation, and which, as your petitioner believes, is re *1420 sponsible for the wanton and unlawful imprisonment of herself and her daughter, and which was done in a malicious and cruel manner, notwithstanding the evidence of their innocence was made manifest to said parties.
She represents, that one of said parties, notwithstanding he was fully-informed of all of the aforesaid facts, made an affidavit on the part of said corporation, before the judge of the First Recorder’s Court, “in which he falsely and corruptly charged your petitioner and her little daughter with having committed the felonious crime of breach of trust and embezzlement of two bicycles, alleged to have been hired from said corporation on March 26, 1897, as set forth in said affidavit.”
That shortly after said affidavit was made, and they had been released on bond, “they were called upon by said Recorder, and notified that said charges had been withdrawn, and that they were discharged therefrom.”
Petitioner alleges, “that at the time that said charges were preferred, and of their arrest and imprisonment, they were persons of good moral character and reputation, professed Christians, members of the Baptist Church, and in full enjoyment of their Christian faith and ehurch■fellowship.”
That the said charges of grand larceny and breach of trust and embezzlement, as above set out, were libelously and slanderously made, without propable cause therefor; and that they were thereby wantonly and maliciously libelled and slandered in their good name, character and reputation.
That in their arrest and subsequent detention and incarceration, they were unlawfully, falsely and maliciously prosecuted, without any probable cause or justification whatever, and greatly to their injury and damage. That by law, they are entitled to sue for and recover not only compensation for all the said losses and injuries sustained, -but, also, in addition thereto; to recover exemplary and punitive damages therefor.
The petitioner alleges “that she was married in 1873 in the State of Mississippi, where she and her husband continuously resided, and which is their exclusive matrimonial domicil; and her said husband is absent from the State of Louisiana, with his residence and domicil in the State of Mississippi, which is, also, her domicil; and that as to their matrimonial relations, as well as their acquisitions and property rights, they are subjected to and governed by the laws of the State of Mississippi.
*1421 “That by the laws of said State, she is separate in property from her said husband, with the sole right and authority to administer separately her own personal affairs, property rights and acquisitions, and entitled to acquire, hold, use and dispose of the same, from the control or marital influence of her said husband; with the right and capacity to sue and be sued personally and without joinder or authority of her husband, as to all matter^ relating to or affecting her personal rights or property interests.
“That by the laws of said State, the damage herein sued for and sustained by her, arose and accrued to her separately, and not in whole or in part to her husband. That the laws of her matrimonial domicil govern and control her right to separately sue for the damages herein claimed, which were sustained by her while in Louisiana.”
She further shows, “that her said husband abandoned her in 1893, after six children were born of their marriage, and disappeared from the matrimonial domicil, and has since absented himself therefrom; that she is not now aware of the precise locality in Mississippi in which he may be found; and that by the laws of Louisiana, she is entitled to exercise all the rights of her husband with respect to the education and administration of the property rights of their children. That by said law, she, being now present in the State of Louisiana, is entitled to sue herein for her said daughter, Florence, and to claim for her use and benefit the damages herein alleged.
Wherefore, she prays to be authorized by the court to institute this suit and stand in judgment; and for judgment against said corporation for the sum of ten thousand dollars in her own right, and for the further sum of ten thousand dollars' for the use and benefit of her daughter, Florence. The foregoing petition was met in its incipiency by several exceptions.
In our previous opinion we examined and reversed the judgment of the District Court sustaining the defendant’s fourth exception, which is to the effect that “there is an improper and illegal joinder of parties plaintiff • that there are two distinct actions and demands presented, by and for two different plaintiffs, cumulated in the same petition, and ono or the other should be dismissed.”
Having made a statement of the cau.se of action and quoted the foregoing exception, our opinion says:
“For the purpose of the trial of the exception of mis-joinder md im *1422 proper cumulation, the capacity of Mrs. Williams to sue individually and on behalf of her minor daughter must be admitted. This leaves to be detenrtined the plain question, whether a cause of action arising in behalf of Mrs. Williams, growing out of the tort of defendant, and a cause of action arising in behalf of her daughter, growing out of the same tort, may be cumulated in one and the same suit. We.think it may.
“For the purpose of the suit, the mother is assimilated to the character of tutrix of her daughter. Common wrong is represented to have been inflicted on the two at one and the same time.”
Inasmuch as that exception judicially avers, “that there are two distinct actions and demands prosecuted by and for two different plaintiffs, cumulated in the same petition, and one or the other should be dismissed”, the argument in favor of the theory, that neither of them can be maintained appears to be somewhat illogical, in view of the fact that this court has already decided that both were correctly brought and properly cumulated in one petition, for the reason that the cause of each action was the same fault of the defendant, and the acts of the defendant a common wrong to both mother and daughter.
That exception, in terms, admits ;as much, bécause it is premised by the statement, that “if the above exceptions should be overruled, and the court hold that either or both of said causes of action or demands are properly brought, and by the proper party, the defendant pleads f,or further exception, etc”; and by that averment it 'distinctly bases said fourth exception upon the hypothesis that his preceding exceptions were untenable.
If we are now to exaxúine the preceding exceptions and affirm the judgment of the District Court sustaining them and dismissing the plaintiff’s suit, our present decree would, in effect, be in exact opposition to its prior judgment overruling the fourth exception, and maintaining the suit.
In our view, for all practical purposes, such is the purport of the judgment appealed'from.
But, accepting the situation ás it is now presented on the record be-' fore us, what are ’the legal questions for determination ?
First. That the plaintiff has no right or interest in her own name, to prosecute this suitl and stand in judgment herein, under the laws of this State”; and she cannot, by alleging that her husband’s domicil is in *1423 another State, invoke the benefit of the laws of such State to the practical nullification of all laws of this State regulating the marital relations (of the spouses) ; (because) foreign laws are not permitted to be operative in this State when they are inconsistent with the general spirit and policy of our own laws on the subject matter involved.”
Second. That the allegations of the plaintiff leave in doubt the present domicil of her husband; so that if her theory be'admitted to be possible, or correct in law, she does not allege, with sufficient certainty, the facts under which the court is requested to adjudicate her rights as “a citizen of the State of Mississippi.”
Third. Petitioner basAo right or authority, in fact or law, to bring and prosecute the demand for the use and benefit of her minor child.
Fourth. That the judge’s authorization of the plaintiff was inadvertently granted upon an'insufficient showing in law.
Fifth. That the allegations of the petition are too vague and indefinite; and particularly in that the demands for the damages claimed are neither itemized nor apportioned between the mother and daughter.
These exceptions are directed at the allegations of the petition, and must be determined thereby, with a view to the law governing same; and in thus determining them, no matter of fact which is well pleaded in’ the petition can be denied or gain-said.
I.
In the petition it is alleged that plaintiff was married to her husband in the State of Mississippi, in 1873; that she and her husband have since continuously resided there; and that their exclusive matrimonial domicil is in that State.
That the matrimonial relations of herself and her husband, as well as their acquisitions and property rights, are subject to and governed by the laws of the State of Mississippi.
That by the laws of said State, she is separate in property from her husband, with the sole'right and authority to administer separately her own personal affairs, property rights and acquisitions, and entitled to acquire, hold, use and dispose of the same free from the control or marital influence of her husband; and that she is, under the laws of that State, invested with the right and capacity to sue personally and without the joinder or authority of her husband, as to all matters relating to, or affecting her personal rights, or property interests.'
*1424 ' It is, also, specifically alleged, “that by the laws of said State, the damage herein sued for and sustained by her, arose and accrued to her separately, and not in whole, or in part, to her husband; and that the laws of her matrimonial domicil govern and control her right to separately sue for the damages claimed, which were sustained by her while in Louisiana.
' The foregoing full and complete allegations (1) as to her matrimonial domicil being now, and having always been, in the State of Mississippi; '(2) that her property rights and acquisitions are subject to and governed by the laws of that State; (3) that by the laws of that State, she is separate in property from her husband, with the sole and exclusive authority to separately administer her own personal affairs and property; (4) that she is, by the laws of that State, invested with the right and capacity to sue personally without the assistance or authority of her husband, in respect to all matters relating to her personal rights and property interests; (5) and that, under the laws of that State, the damages herein sued for and sustained by her, arose and accrued to her separately, and entitled her to personally sue for and recover same — certainly leave no room for complaint on the score of inadequacy of allegation.
Taking the averments as they are made, the plaintiff has stated a complete cause of action and right of action, unless, as the exceptions aver, (1) that she possesses no right of action in her own name undet the laws of Louisiana; (2) that she cannot be allowed to invoke the laws of Mississippi, and by so doing, practically nullify the laws of Louisiana regulating the marital relations of the spouses.
Or, in other words, the question for .'consideration is whether (1) the damages sued for by the plaintiff in her own right, as having been sustained by her while temporarily in Louisiana, and which accrued to her separately, are subject to and to be controlled by the law of her matrimonial domicil; (2) or to be governed and controlled by the law of the State of Louisiana which regulate the ¡matrimonial relations and property rights of married persons who reside outside of its limits but acquire property rights within its limits.
The solution of that question must, of necessity, depend upoii whether the legal situs of (plaintiff’s claim for damages ex delicto arising from a tort, or quasi offense, is in Louisiana, or Mississippi; for if same be in Louisiana where the wrong is alleged to have been com *1425 mitted, the law of her matrimonial domicile does not control or govern her .right of action, and vice versa.
Our law provides that “all property acquired in this State by nonresident married persons * * * shall be subject to the same provisions of law which regulate the community of acquets and gains between citizens of this State.” R. C. C. 2400.
Consequently, as the plaintiff was, at the time the alleged injury was inflicted, a “non-resident married person,” she fulfils all the requirements of that law, if the damages she claims are to be denominated “property acquired in this State;” but if her right of action for the recovery of such damages be a personal right, or acquisition which has its legal situs at her matrimonial domicile, then it can not be classed as property acquired in this State, and would not be subject to the community laws of Louisiana, but would remain under the power and control of the law as it is alleged to be in the State of Mississippi.
. Taking a comprehensive view of the question, it seems difficult to appreciate the idea that a mere right of action for the recovery of damages ex delicto is to be viewed as “property acquired in this State,” because of a personal injury having been inflicted upon a married woman while temporarily abiding therein.
And particularly is this appreteiation difficult, when we are presented with an action of damages brought by a married woman whose matrimonial domicile is in the State of Mississippi, against a private corporation whose principal domicile is in the State of Connecticut, and in which she predicates her claim upon injuries that were inflicted upon her while in the State of Louisiana, by the agents and employees of that corporation.
If such a right of action is to be viewed as property acquired in Louisiana, and subject to its community laws, then the courts of this State are vested with exclusive jurisdiction over it. As 'a result of this conclusion, the husband as head and master of the community could alone institute the suit; and he, as a citizen of Mississippi, an absentee under the law of Louisiana, is without interest in the result of the suit under the law of his domicile. Not only so, but such a right of action eoiild only have an existence in the courts of Louisiana so long as the Connecticut corporation may be pleased to continue business in Louisiana; and would, therefore, have the'power to extinguish same at any time it might suit its pleasure to withdraw its agents therefrom — an action in damages not being the legal subject for attachment.
*1426 If this be the law of this State, it is most unfortunate, indeed.
Our learned brother of the District Court recognized this hardship when he said:
“The case at bar furnishes an illustration of the distinction between law and justice. If the averments of the petition are to be taken as true, as they must be, for the purposes of the exception presented herein, then this ease illustrates the hardship that sometimes occur in the law.
“The plaintiff alleges that she is a married woman, and with her minor child has been abandoned by her husband.
“In the month of April, 1897,-it is alleged, that she and her minor daughter, Florence, then aged about fourteen (14) years, were wantonly and maliciously arrested by the agents and employees of the defendant company and cast into jail, where they remained twenty-four hours, although, as was subsequently shown by the defendant’s own discontinuance of the prosecution, there was no ground whatever for the charges, which were grand larceny and embezzlement.” '
But having made an examination of the exceptions, he reached the conclusion that same were well grounded in law, and expressed the following view, viz.:
“Passing aside as unnecessary for the purposes of this ease the question of situs of the property, or right upon which this plaintiff brings this ajction, but being of the opinion that the situs of a personal obligation for the purpose of enforcing it, is at the domicile of the debtor, and not that of the creditor, the court is, however, of the opinion, that under Article 2400, of the Civil Code, the damages to the wife in the present case fall into the community property acquired within the State of Louisiana, damages to person coming well within the meaning of property or rights acquired. Furthermore, there is a decision in the 11th Federal Reporter, at page 688, in the case of Myerson vs. Alter, by that able jurist, Judge Billings, in which this point is decided adversely to the claims of the plaintiff. The damages, therefore, falling into the community, the husband alone can prosecute the suit therefor.”
The case cited and relied upon by the judge.a quo, states a case instituted by a married woman in the United States Circuit Court for the State of Louisiana, for the recovery of damages for a malicious prosecution — same being instituted by the wife in her own right, but authorized by her husband.
*1427 On this state of facts, the court held:
“The textual provisions of the law on this subject are found in the Code of Practice, Article 107, and Civil Code, Article 2404. A series of decisions by the Supreme Court of Louisiana have construed these' provisions to moan that where it does not appear that the wife is administering her own property, actions of this sort must be brought by the husband. The mere joinder of the wife has been treated as surplusage.' But no case has held that the mere assent of the husband is sufficient. The action must be brought by the husband. Holmes vs. Holmes, 9 La., 350; Cowand vs. Pulley, 9 Ann., 12; Barton vs. Kavanaugh, 12 Ann., 332; Cooper vs. Cappell, 29th Ann., 213. This would be the law if the marriage had been contracted and the domicile of the parties to the marriage had been within this Statei Civil Code Article 2400, subjects ‘non-resident married persons’ to the same provisions of law ‘as regulate the community of acquets and gains between citizens of this State,’ so far as relates to ‘all property acquired in this State.’
“It is not necessary to give any technical meaning to the word ‘property’ as used, by the Legislature. The object of the Legislature, namely, to subject non-resident citizens, is manifest, and leaves no doubt but that the word ‘property’ included not only land and chattels, real and personal, but also choses in action.”
It must be confessed that the tenor of that decision supports the view the district judge entertained, but, in our opinion, it is of such far-reaching importance and scope, that an examination should be made of the jurisprudence of this court and that of the States in which the common law prevails for the purpose of ascertaining its applicability and correctness.
At common law, a proceeding like'this is styled a transitory action of trespass, which follows the tort-fekiser into any jurisdiction into which he may go, and who may be taken wherever found; and the right of action is equally permissible against a corporation as against a private individual.
In the case of Pullman Palace Car Company vs. Lawrence, 32 Southern Reporter, 53, the Mississippi court had such an action .under consideration.
The action was instituted by Lawrence, a citizen of Illinois, in the Circuit Court of Claiborne County, Mississippi, against the Pullman *1428 Company, an Illinois corporation, for $50,000 damages for personal injuries alleged to have been inflicted by a colored porter upon him while he was on one of its sleeping cars, in which he was being transported from Chicago, Illinois, to New Orleans, Louisiana — said injuries having been inflicted upon him while the train was in the State of Illinois, at the hour of 10 o’clock p. m., after leaving Chicago in the afternoon of that day; and the service having been made on the conductor of the sleeping car while at Port Gibson, Mississippi, on the line of the Illinois Central Railroad.
On that state of facts, the court said:
“The defendant first pleaded to thé jurisdiction of the court, because “ the wrong and injury complained of occurred wholly in the State of “ Illinois, and not in the State of Mississippi, and because the plaintiff “ and defendant were at the time of the bringing of the suit, and still “ are, citizens of and residents in the same State of Illinois. To this “ plea to the jurisdiction, plaintiff demurred, and the demurrer was “ sustained, and leave was given the defendant to plead to the merits, “ and the defendant then filed the general issue, etc.”
In this situation, and to the cause of action thus stated, the court announced the law to be:
“It is assigned for error that the court below erred in sustaining plaintiff’s demurrer to the plea to the jurisdiction filed by the defendant. Until the hearing of the able and exhaustive oral argument of appellant’s counsel in support of this assignment, we had supposed there was, in our State, no ground left for dispute that in transitory actions, whether in tort or on contract, our courts were wide open to any suitor, resident or non-resident, against his adversary, whether resident or non-resident, whether a natural person or an artificial one, regardless of where the right of action occurred, if only the courts had jurisdiction of the subject matter, and could obtain jurisdiction of the party, either by a voluntary appearance, or by service of process.
“We are aware that there is some divergence of opinion on this subject between the courts of last resort of this country, and that apparent authority can be found for holding that ,’a foreign corporation resident in one State, may not be sued in another State by a resident of the first State on a cause of action arising in the first State. * * * But in many States, and among them our own, the rule we first announced has been firmly established by repeated adjudication. The *1429 rule was first expressly declared in our own State in the case of Railroad Company -vs. Wallace, 50 Miss., 244. This was an action brought by Wallace against a railroad company, a foreign corporation, in one of the courts of this State, for the recovery of damages for injuries sustained by him in a collision of trains in the State of Louisiana. The court said then on this very question: ‘Corporations are artificial persons existing only in contemplation of law. They must dwell in die place of their creation, and can not migrate to another State. But they are liable to be sued like natural persons in transitory actions arising ex contractu or ex delicto, in any State where legal process can be had. * * * In transitory actions, foreign private corporations, like natural persons, may be sued anywhere where the court can obtain jurisdiction of the corporation either by legal service of process, or its appearance by attorney.’ ”
The court then states that the same question was decided by that court in Railroad Co. vs. Doyle, 60 Miss., 977 — the action being brought in Mississippi against a foreign corporation for an injury done in the State of Tennessee.
In deeiding that Case, the court, speaking through its Chief Justice, said:
“The right of action for damages for killing a .husband by the statute of Tennessee may be asserted in the courts of this State, because a right of the co-incidence of the statutes of the two States on this point; and independently of this, because a right of action ereated by the statute of another State, of a transitory nature, may be enforced here when it does not conflict with the public policy of this State to permit its enforcement.”
A similar case is stated by that court in Railroad Company vs. Crudnup, 63 Miss., 291 — the injury having been inflicted in a collision of trains in Tennessee.
The Supreme Courts of the United States, of Minnesota, of New York and Kentucky held the same view.
In the still later case of McMaster vs. Railroad Co., 65 Miss., 264, the same proposition was maintained — the injury having been inflicted-in the State of Louisiana.
The case of Knight vs. Railroad Company, 108 Pennsylvania State, 250, was an action of trespass for the recovery, in a court of Pennsylvania, of damages for the death of the wife and mother of the plaintiffs *1430 by a railroad -accident that happened in New Jersey, and the court said:
“The general rule is, as to personal torts which give a right of action at common law, that the action may be brought wherever the wrongdoer may be found, and jurisdiction of his person may be obtained. * * -x- The statute of another State has no extra-territorial force, but rights under it will always, in comity, be enforced, if not against the policy of the laws of the forum. In such cases, the law of the place where the right was acquired * * * will govern as to the rigjht of aiction, while all that pertains merely to the remedy will be controlled by the law of the State where the action is brought,” — citing Herrick vs. Railway Co., 23 Am. Law Reg., 26, and the case of Dennick vs. Railroad Co., 103 U. S., 11.
The court further held:
“That action was brought in a State court in New York for recovery of damages under the Statute of New Jersey which imposes liability therefor upon a party by whose wrongful act, neglect or default, death ensues.
“The accident which caused the death of the plaintiffs husband occurred in the latter State. After remarking that the right of action depended solely upon the statute of New Jersey, and that it was a civil action to recover damages for a civil injury, the court said: ‘It is difficult to understand how the nature of the remedy, or the jurisdiction of the court to enforce it, is in any manner dependent on the question whether there is a statutory right or a common law right. Whenever, by either the common law or the statute of the State, a right of action h,as become fixed and a legal liability incurred, that liability may be enforced and the right of action pursued in any court which has jurisdiction of the parties. * * * A party legally liable in New Jersey can not escape that liability by going- to New York. If the liability to pay money was fixed by" the law of the State where the transaction occurred, is it to be said it can be enforced nowhere else because it depended on statute law and not upon common law ? 'It would be a very dangerous doctrine to establish that in all cases where the several States have substituted the statute for the common law, the liability could be enforced in no other State but that where the statute was enacted and the transaction occurred.’
“Obviously, that case affirms, that a personal liability created by the *1431 statute of another State will be enforced according to the course of procedure in the State where the defendant may be found. It was .no less important to consider the point than it would have been in the State court had the cause not been removed. * * *
“We think the weight of the recent and better considered adjudications in this country, decidedly favors the application of the same rule to all transitory actions for injuries to persons or property, whether recognized by the common law, or created by statute, to meet new exigencies of modern life, unless such statute is contrary to the policy of the laws of the State where the action is brought. The claim of comity on which the rule is founded, is as urgent in one case as the other. * * *
“As a general rule, neither citizenship nor residence is requisite to entitle a person to bring suit in Pennsylvania. A court having jurisdiction of the subject, may acquire jurisdiction of the person by lawful service of its process. If a defendant were not liable to answer in a civil action, in any State where he may be found, he could easily, evade the service of process.” (Our italics).
In Burns vs. Railroad Co., 15 N. E., 230, the Indiana court said:
“When the railway company wrongfully caused the death of William Burns in the State of Michigan, we have seen that a right of action, under the statutes of that State, accruted to his personal representatives, to recover civil damages for the benefit of those to whom his personal property became distributable. It is a well established principle that rights which have accrued under the laws of a. foreign State, are treated as valid rights everywhere; and by means of this principle, cognizance is taken of extra-territorial laws, and of facts extra-territorial, when these laws and facts have conferred rights or imposed obligations upon persons who are within the jurisdiction of the court. (Italics ours).
“The application of this principle requires' that the injuries prescribed, must have given a right of action under the laws of the place where the default or neglect occurred. A civil right of action is acquired under the laws of the State where the injury was inflicted, or a civil liability incurred in one State, may be enforced in any other in which the party in fault may be found, according to the course of procedure in the latter State" — citing among others, the following authorities:
Dennick vs. Railroad Co., 103 U. S., 11; Leonard vs. Navigation Co., *1432 84 N. Y., 48; Railroad Company vs. Swint, 73 Ga., 651; McLeod vs. Railway Co., 58 Vt., 727; Boyce vs. Railway Co., 63 Iowa, 70.
Again:
“Actions for the recovery of damages for personal injuries, are transitory in their nature, and arise out of the supposed violation of rights which in contemplation of law are not local, nor confined to the State where the right accrued. Such actions have always been regarded as transitory in character - and although the injury 'and the right of action may have accrued in a foreign State, it is now settled by an overwhelming weight of authority that the jurisdiction of courts to entertain and enforce the right is not dependent upon whether it is of a statutory or common law origin, provided the enforcement of the right in no way infringes upon or contravenes the policy of the State in whose jurisdiction the remedy is sought.”
The case of Eingartner vs. Steel Co., 68 N. W. Rep., 664, was an action in a court of Wisconsin to recover for personal injuries suffered by the plaintiff in a rolling mill in the city of Chicago — the plaintiff being at the time and now, a citizen of Ulinois, and the defendant being an Illinois corporation.
The court said:
“This is an action to recover damages for injuries to the person. If is, therefore, purely a transitory hction, and the principle that the courts of this State have jurisdiction to entertain such an action, although the cause arose in Illinois, and the parties are residents of Illinois, is unquestioned. Curtis vs. Bradford, 33 Wis., 190. A court of this State would even have jurisdiction of a transitory action of this nature where it arose in a foreign country, or on the high seas, and both parties to the action were aliens, provided jurisdiction of the person could be obtained.”
Gardner vs. Thomas, 14 John., 134; Johnson vs. Dalton, 1 Cal., 543; Railway Company vs. Miller, 19 Mich., 312.
On considering the principles of jurisprudence announced in the foregoing decisions, and applying same to the law of the State of Mississippi as it is alleged to be, we have referred to the statute of that State relating to the matter at issue, in connection with the decisions, as we do customarily, for the purpose of tracing the connection between che two, and as a necessary means of determining the question of law that had been propounded in this controversy touching a material dis *1433 tinction which is claimed to exist between the laws and jurisprudence of Louisiana, and the laws and jurisprudence of the State of Mississippi, with relation to plaintiff’s ownership and control of the right of action for the recovery of damages against defendant. And, having examined same, we have found it to be as follows, viz.:
“Married women are fully emancipated from all disability on account of coverture; and the common law, as to the disabilities of married women and its effect on the rights of property of the wife, is totally abrogated; and marriage shall not impose any disability or incapacity on a woman as to the ownership, acquisition or disposition of property of any sort; or as to her capacity to make contracts, and do all acts in reference to property which she could lawfully do 'if she were not married; but every woman not married or hereafter to be married, shall have the same capacity to acquire, hold, manage, control, use, enjoy, and dispose of all property real and personal, in possession or expectancy, and to make any contract in reference to it, and to bind herself personally; and to sue and be sued, with all the rights and liabilities incident thereto, as if she were not married.” (Our italics).
Section 2289 Annotated Code of Mississippi for 1892.
Unquestionably, the plaintiff would bo recognized as having a right of action in a Mississippi court under that statute, if the corporation could be found and cited there, notwithstanding the injuries complained of were inflicted in Louisiana; and it is claimed that, under the comity which prevails between the States — and particularly between two States, that are so intimately associated as Louisiana and Mississippi are — she ought to be recognized as having a right of action in the courts of Louisiana, independently of its community laws, as she might have in the courts of Kentucky, Tennessee or Illinois.. For, if a citizen of Illinois may go into a court of Tennessee or Mississippi, with an action for damages which were inflicted in Louisiana, he ought to be accorded a similar right of action in Louisiana courts for injuries inflicted in Mississippi.
The legal deducton from this jurisprudence is, that the cause of vaction on a tort or trespass is transitory, and follows the offending party into any jurisdiction wherein he may be found; and further, that the right of action being personal to the complainant, he may bring it in any court that he may select.
Having thus dealt with plaintiff’s right of action, as same would stand in a Mississippi court under the statement of the law as given in *1434 her petition with regard to what her legal rights as a citizen of Mississippi are, and as that statement has been verified by the statute, we must now determine what is the legal status of her claim against the defendant, under the law of Louisiana; that is to say, whether it is to be viewed, in a general sense, as governed by the lex loci contractus, and therefore, an asset of a matrimonial community pro hac vice which exists in this State by virtue of the law. For, if this be the case, the plaintiff is without a right of action in the courts of this State in her own name, notwithstanding she might have such a right of action in the courts of Mississippi.
II.
As we have already seen, the judge a quo entertaimed the opinion and decided (1) that the situs of a personal obligation for purposes of suit is at the domicile of the debtor, and not at that of the creditor; (2) that “the damages to the wife in the present case fall into the community as property acquired within the State of Louisiana, damages to persons, coming well within the meaning of property, or rights acquired.”
The two foregoing propositions are one and the same for all practical purposes — the latter depending upon the former — for, if the legal situs of the demand in damages which is declared upon, is in Louisiana, it necessarily falls into the legal community which exists under its laws, notwithstanding the husiband and wife were citizens of Mississippi at the time it sprang into existence.
It has been frequently held that the community law of this State is a real and not a personal statute; and the decisions on the subject refer to the opinion of our predecessors in the important and conspicuous case of Saul vs. His Creditors, 5 N. S., 666, as the original source from which that doctrine emanated, in which the court, after a most; extensive exploration of Spanish and French statutes and decisions interpreting them, and from which our statute is derived, made the following statement, viz.:
“We think the state and condition of both husband and wife are ;fixed by the marriage, in relation to everything but property, independa ent of this law; and as it regulates property alone, it is not a personal statute. * * *
“We consider it real.” (Our italics).
*1435 And, considering our community law a real statute which, deals with property that is situated in the State, and not with the personal rights or condition of the spouses, the court makes this observation, viz.:
“On the subject before us, the writers who treat of it * * * agree in stating that a real statute, that is one which regulates property within the limits of the State where it is in force, controls personal ones, which follow a man wherever he goes; indeed it has been * * * admitted that where the personal statute of the domicile is in opposition to a real statute of situation, the real statute will prevail.” (Our italics).
In Cole vs. Executors, 7 N. S., 401, the court made approving reference to Saul vs. His Creditors, and observed:
“But we there determined that the law, or, to adopt the language of the jurisprudence of the continent of Europe, the statute, which regulated the rights of a husband and wife, was real, not personal, that it regulated things, and subjected them to the laws of the country in which they are found.
********
“Viewing the statute as real, it is the thing on which it operates that gives it application, not the residence of the person who may profit-by the rule it contains.”
In Heirs of Dohan vs. Murdock, 41st Ann., 494, the court had under consideration the question of the legal effect of the statute of 1852, now Article 2400' of the Revised Civil Code, as appertaining to property acquired in Louisiana by married persons who resided in Mississippi, and in the course of its opinion said:
“The conjugal partnership thus provided for is exclusively a creature of the civil law, and can result only from express legislative will; hence it could exist only under circumstances especially provided for.”
So, it is frorn this standpoint that we are to commence our investigation of the question of the status of the plaintiff’s demand for damages ex delicto arising from a wrongful act of the defendant; and whether it is to be considered as “property acquired” under our community law considered as a real statute.
We have made a careful examination of our own reports and have made the following extracts from the cases cited:
In Ford vs. Ford, 2 N. S., 574, it was held that the common law of England, unless altered by local laws, is the governing rule of decision in the State of Mississippi.
*1436 In Arendell vs. Arendell, 10th Ann., 566, it was held, that the right of the husband to slaves owned by the wife at the time of their marriage in Alabama, must be determined by the laws of Mississippi where the spouses intended to fix their matrimonial domicile and where they subsequently resided.
And, in so deciding, the court held, that under the principles of the common -law which was in force in Alabama, the slaves would have been the property of the husband; yet, under “the Mississippi statute of 1839, commonly called the Woman’s Law, they would remain the separate property of the wife.” Citing Hutchinson’s Mississippi Code, page 497.
In Insurance Co. vs. Morton, 3 Ann., 417, a case is stated of a suit brought on two promissory notes which were executed by the husband and wife jointly in the State of Maryland where they resided and continued to reside, and the legal question was, as to the capacity of the wife to make the contract which was secured by a mortgage on property in Louisiana, and, in discussing the married woman’s capacity to contract, the court said:
“The disability to contract exists, only in a certain contingency, and that contingency is strictly personal. * * *
“This article does not even purport to aifdct the immovable property of married women. Its operation upon such property is only indirect. * * *
“It has no one characteristic of what is considered in jurisprudence as a real statute. These laws are real, in contradistinction to personal statutes, which regulate, directly, property, without reference to the condition or the capacity of its possessor.”
In Succession of Susan Thomas, 35th Ann., 19, a. clear illustration is given of the law of situs as -it appertains to personal and movable property and debts situated in the State of Mississippi — the decedent having died at Biloxi, Mississippi, possessed of no property other than some promissory notes and her wearing apparel.
On this state of facts, the court said:
“From all this it appears that there is nothing in Louisiana that can give jurisdiction to this court. The only property the decedent died possessed of is personal or movable, and this species of property follows the domicile, and is' determined by its laws. Its disposition or transmission by inheritance depends on the law of that domicile; and this is especially true of debts which follow the creditor’s person.”
*1437 But, the court further held that if the proof had shown that the deceased owned personal property situated in Louisiana, a court of that State would have possessed jurisdiction over it, notwithstanding her domicile was in Mississippi.
In Marvenare vs. Merdella, 10 Ann., 772, the court made this important statement of the principles of the common law:
“In a sister State it was held that this inchoate right of the husband to the dioses in action of his wife, not reduced to possession, was entirely defeated by the subsequent passage of an act of the Legislature vesting in the wife, in her own name, her real and personal property.” See Hayden vs. Nutt, 4th, Ann., 65.
In Bene vs. Sparrow, 11 Ann., 185, it was held that by the laws of Pennsylvania and Maryland, if tha husband has not, during his life, reduced to possession the dioses in action of his wife, they will pass to her representatives; and the court applied that rule to rights, credits and choses in action which were assets of the estate of a decedent which were partly situated in Mississippi and partly in Louisiana.
In Succession of Robinson, 23 Ann., 174, it was held that the revenues of property situated in Mississippi, which belonged to the husband who resided in Louisiana, did not belong to or form part of the legal community in Louisiana.
It appears from the opinion, that the spouses were married and resided in Mississippi, and owned a plantation there, and removed therefrom to Louisiana in 1851, and the wife died in 1863 at the family domicile therein; and the legal question involved was, whether or not the revenues of the real estate in Mississippi belonged to the Louisiana community; and the court held that they did not.
In Paul vs. White, 7 Ann., 449, the court made this very clear statement with regard to the situs of money, stocks, and bills receivable, viz. :
“It does not appear where the deceased resided. His property was entirely personal, consisting of government stocks, bills receivable, and a small sum of money. If the deceased was a resident of Englandj transiently passing through our country, the disposition of his personal property, according to the laws of England, would be valid.
“And the official knowledge we have of these laws, enables us to say, that the bequests in controversy, are in conformity with the laws of England.”
*1438 With regard to the legal situs of personal property and debts and contracts, the general doctrine is well stated in Succession of Packwood, 9 R., 438, as follows, viz.:
“We regard it, also, as a well settled principle of law that personal property has no other situs than the domicile of the owner, and that its disposition and transmission, by contract or inheritance, depends upon the law of the owner’s domicile.” * * *
This doctrine is especially true of debts, which, according to all the authorities, follow the person of the owner or creditor.
The foregoing adjudications of this court merely state the general principles of the common law of England, as it exists in Mississippi, except in so far as it has been modified by statute, and harmonize same with the community law of Louisiana; and to make this statement clear, we have collated the following excerpts from, text books of well known authors and, also, from adjudications of the Supreme Court.
Judge Story puts the proposition thus:
“The general principle certainly is, as we have already seen, that between persons sui juris, marriage is to be decided by the law of the place where it is celebrated. If valid there, it is valid everywhere.
“It has a legal ubiquity of obligation.”
Story on Conflict of Laws, Section 113.
In Wilkins vs. Elliott, 9 Wallace, 740, the court thus very tersely stated the accepted canon of construction with reference to the situs of personal property.
“It has long been settled, and is a principle of Universal jurisprudence, in all .civilized nations, that the personal estate of the deceased is to be regarded, for the purposes of succession and distribution, wherever situated, as having no other locality than that of his domicile; and, if he dies intestate, the succession is governed by the law of the place where he was domiciled at the time of his decease, and not by the conflicting laws of the various places where the property happened to be at the time situated.”
But the principle is nowhere stated with greater force and perspicuity than by Chancellor Kent:
“But it' has become a settled principle of international jurisprudence, and one founded on a comprehensive and enlightened sense of public policy and convenience, that the disposition, succession to, and distribution of personal property, wherever situated, is governed by the law *1439 of the country of the owner’s or intestate’s domicile at the time of his death, and not by the conflicting laws of the various places where the goods happened to be situated.
The principle applies equally to cases of voluntary transfer, of intestacy and of testaments.
“On the other hand, it' is equally settled in the law of all civilized countries, the real property, as to tenure, mode of enjoyment, transfer and descent, is to be regulated by the lex loci rei sitae. Personal property is subject to that law which governs the person of the owner. Debts and personal contracts have no locality — debita sequuntur personam. debiioris.” 2 Kent’s Com., p. 429.
This principle was recognized and applied by the English court in the case of Dill vs. Wersick, 1 H. B. L., 690, and Lord Ellenborough, speaking for the court, said:
“Personal property has no visible locality, but it is subject-to that law which governs the person of the owner.”
In Murray vs. Charleston, 96 U. S., 432, it was held that debts are not property; and a non-resident creditor of a city can not be said to be, in virtue of a debt which it owes him, “a holder of property within its limits.”
From the foregoing decisions, we have the following propositions established: (1) That the community law of this State is regarded as a real statute, as it is in France and Spain; (2) being a real statute, it deals with and regulates property situated in this State, and does not deal with personal rights or condition of the spouses; (3) that the state and condition of husband and wife are fixed by the marriage in everything except .property, independent of this law; (4) that if a personal statute of the domicile in this State, is in opposition to a real statute of situation, the- real statute will prevail, or, in other words, it regulates property situated in the -State independently of the personal rights of the owner arising out of marriage; (5) that as the community law results only from positive legislation, it can have affect only undep circumstances that are especially provided for; (6) that disability to contract, to acquire, or to recover only exists in a certain contingency and that contingency is strictly personal, and its operation upon property is entirely incidental; (7) that, under the law governing the jurisprudence in the State of Mississippi, personal property that is situated at the domicile of a citizen of that State, is governed thereby, *1440 and same does not become subject to the law of Louisiana; (8) that the foregoing rule is especially applicable to “debts which follow the creditor’s'person;” (9) that the rule thus announced does not apply to personal or movable property situated in this State, but it does apply to debts and other incorporeal rights, which attach to the persons of the creditor, and pass with him into any jurisdiction where he may go; (10) that under the principles of the common law of England, which prevails in Mississippi, except in so far as it has been modified by statute, dioses in action of the wife, not reduced to .possession by the husband, are under her exclusive control, but that restriction has been entirely removed by statutes which give her absolute and exclusive control of same.
Having made an extensive examination of the jurisprudence of this court and that of the courts of other States and countries, it seems evident that the claim for damages which the plaintiff has brought is not property real or personal in the ordinary acceptation of the term, but an intangible thing without visible locality, which is exclusively under her control as the party injured, and passes with her wherever she may go. That it is transitory and has no other situs than that she has given it by the institution of this suit, and which she might have brought with equal proprietry in a court of either Mississippi, where she lives, or in Connecticut, where the defendant abides.
In this connection, we can not do better than quote the following language that was employed by Mr. Justice Miller, in Dennick vs. Railroad Company, 103 U. S., 17, in dealing with defendant’s liability in a civil action for damages resulting from a Wrongful act whereby death resulted, viz.:
“It can be scarcely contended that the act belongs to the class of criminal laws which can only be enforced by the courts of the State where the offense was committed, for it is, though a statutory remedy, a civil action to recover damages for a civil injury.
“It is, indeed, a right dependent solely on-the statute of the State; but when the act is done for which the law says the person shall'be liable, and the action by personal and not a real action, and is of that character which the law recognizes as transitory and not local, .we can not see why the defendant may not be held liable in any court to whose jurisdiction he can be subjected by personal process, etc.”
That decision teaches, that an action for damages resulting from a wrongful act, is a civil action in the enforcement of a statutory remedy *1441 which is supplied by the State where same was committed to the person injuredj and that such an action is a personal one and of that character which the law recognizes as transitory and not local, and may be brought in any court where the trespasser may be found.
The authorities demonstrate the utter impossibility of such right of action being “property acquired” in this State, in the sense of Revised Civil Code 2400, and, therefore, an asset of a legal community, existing between the plaintiff and her husband pro hac vice.
If it is to be treated and considered as personal property, its legal situs is at the matrimonial domicile of the plaintiff in the State of Mississippi, and for that reason can not be considered as a community asset with its domicile in the State of Louisiana; and being a debt, or chose in action, it belongs and attaches to the person of the plaintiff, follows her wherever she goes and possesses no other situs than such as she is pleased to give it.
Entertaining this view with regard to the demand of the plaintiff, and finding that, in respect to the enforcement of same, she is a person sui juris under the law of Mississippi in which State her matrimonial domicile exists, our opinion is that she must be recognized as possessing legal capacity to institute and prosecute this suit in her own name; and it consequently results that the judgment appealed from, in this respect, is erroneous.
III.
. The other exceptions become practically unimportant in view of the conclusions we have -already announced in the preceding paragraphs, and they may be treated and considered collectively.
(a) Instead of the plaintiff’s petition being vague, indefinite, and general, it is full, concise, clear, and most specific in details; very much more so than would seem to have been necessary for the presentation of a cause of action like this — an action in damages for personal injury.
In so far as the averments of the petition being inadequate in respect to the statement of the facts as to the whereabouts of the plaintiff’s husband is concerned, it seems to us of but little importance, as she is sui juris, and he, altogether, without interest in the matter in litigation. His whereabouts at the time when the suit was filed, is of no more concern to the defendant than it was when the wrongful act was done; and *1442 a more specific statement of the facts in that particular, would serve the defendant to no better purpose in the preparation of its defense than it would afford the court in deciding the cause.
(5) The objection that the court inadvertently granted to the plaintiff, as a married woman, an authorization to prosecute this suit and stand in judgment, because of insufficient averment of her husband’s absence and his refusal or declination to grant her permission to institute the same, seems inconsequential, inasmuch as she is mi juris, and therefore competent to sue without his co-operation or assistance in reference to matters that are personal to herself.
But if that were not so, tire mere appearance of the wife in court without the authorization of her husband raises the presumption that her husbdnd has refused his permission, and'the judge may act on that presumption and authorize her suit. This is elementary. Jemison vs. Barrow, 24 Ann., 171.
(c) The objection that the defendant is entitled to know how the plaintiff divides her damages, and to be informed what portion of same is demanded as actual damages and what portion as punitory damages, and that as the plaintiff’s petition has not furnished the information, her suit should be dismissed, is without merit — this question having been decided just the other way.
Bickham vs. Hutchinson, 50 Ann., 765, and . the authorities therein cited.
(d) With regard to the plaintiff’s right to prosecute this suit on behalf of her minor daughter, the judge a quo expressed the following view, viz.:
“As to the exception that the plaintiff is without right to prosecute this suit on behalf of her minor daughter, Elorence, the court is of the opinion that the exception is well taken. I have carefully examined all the French authorities on the subject of absence and disappearance, for the Code of Napoleon contains provisions very similar to our Code, and contains an article which is exactly similar to the article in the Code relied upon by the plaintiff as her authority to bring this suit on behalf of her minor child. These authorities are to the effect, that a disappearance within the meaning of this article is not a mere temporary doubt as to the present whereabouts of an individual that disappears, within the meaning of the Code of Napoleon and the Louisiana Code, but, such a disappearance as to leave the very existence of the person, *1443 so said to have disappeared, in doubt. This theory is absolutely inconsistent with the allegations of the petition in the case at bar, for the petitioner at two places in her petition, set forth, that the exclusive matrimonial domicile is in the State of Mississippi; that her husband resides and is domiciled in the State of Mississippi, and that her husband had disappeared from the matrimonial domicile, and has since absented himself therefrom, and that she is not aware of the precise locality in Mississippi in which he may be found, thus reiterating in two places that the husband is in the State of Mississippi, and simply denying that she is aware at the present time of his precise locality. This is not a disappearance within the meaning of the article, and under an allegation like this, it is not competent for the wife to bring suit on behalf of her minor child.”
In the absence of any averment as to what are the provisions of the law of Mississippi with regard to the authority of the mother to sue for and on behalf of her minor daughter, the law of that State will be presumed to be the same as our own. Allen vs. Allen, 6 R., 104.
The right of action on the part of the minor is not denied, but the exception is that her mother has no authority to appear in court in her behalf.
We have found that the mother is sui juris, and can sue in her own behalf, and the question is whether she can represent her minor daughter who was the subject of a common wrong which defendant inflicted on both of them.
Plaintiff relies upon Revised Civil Code, Article 81, as furnishing adequate authority for her suit in behalf of her minor daughter, the provisions of which are as follows, viz.:
“If a father has disappeared, leaving minor children born during the marriage, the mother shall take care of them, and shall exercise all the rights of her husband with respect to their education, and the administration of their estate(Our italics).
The only question of doubt is with regard to the real meaning of the word “disappeared.” This article is found in the title of the code which treats of “absentees,” and in the chapter entitled “Of the Care of Minor Children When the Father Has Disappeared.”
Upon making an examination of the provisions of the Code under the title of “Father of the Child,” we find what are rights which the father and mother may exercise, and amongst them the following, viz.:
*1444 “Fathers and mothers owe protection to their children, and of course they may, as long as their children are under their authority, appear for them in court'in every Jcind of civil suit, etc” R. C. C. 235.
That authority is conferred upon the father and mother jointly when .they are both present; and it stands to reason that the mother should be authorized to act separately and alone in case the “father has disappeared.”
The law provides that “when a person possessed of either movable or immovable property within this State, shall be absent, or shall reside out of the State,” the judge of the place may appoint a curator. R. C. C. 47.
It must be observed that it is quite sufficient that the person “shall be absent or shall reside out of the State;” either one or the other. No particular period of time is fixed for said absence or residence to have continued — that being left to the sound legal discretion of the judge.
The same is true of the term disappeared; neither the length of disappearance, nor the locality to which he has gone, is specified.
The allegations of the petition with regard to the disappearance of the child’s father are about as definite as they could be expected to have been in any case of disappearance.
■ A disappearance implies doubt and want of knowledge as to his locality or the length of time he would remain away.
Under the circumstances, we are of opinion that the mother was authorized to appear in court in behalf of her minor child and claim the damages due her by the defendant, and stand in judgment therefor.
We think the exceptions not well grounded, and-that they should have been overruled.
It is therefore ordered, and decreed that the judgment sustaining the defendant’s exceptions and dismissing plaintiff’s suit be annulled and reversed; and it is further ordered and decreed that the suit be reinstated and remanded to the court a qua for a trial upon the merits, and that the cost of appeal be taxed against the defendant and appellee.
Breaux, L, I concur in the' decree.